## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SIERRA CONNEY,

    Plaintiff,

v.

                             Civil No. 25-2425-BAH

STATE OF MARYLAND ET AL.,

    Defendant.

## MEMORANDUM OPINION

Self-represented plaintiff Sierra Conney ("Conney" or "Plaintiff")[1] brought suit against the State of Maryland, Assistant State's Attorney Michael Fiorenza ("Fiorenza"), Maryland Home Improvement Commission ("MHIC") investigator Jennifer Grimes ("Grimes"), and John Does 1– 10 (collectively "Defendants") alleging claims arising under 42 U.S.C. § 1983 and Maryland state law. ECF 1. Pending before the Court are three motions: Fiorenza's motion to dismiss, ECF 12;[2] Grimes' motion to dismiss, ECF 14; and Plaintiff's motion for leave to file a surreply, ECF 18. Conney filed a consolidated response to both motions to dismiss, which also includes an informal request for early discovery. ECF 16. Grimes filed a reply. ECF 17. Grimes also opposes Conney's motion to file a surreply. ECF 20. All filings include memoranda of law, and Plaintiff's motion to file a surreply includes exhibits.[3] The Court has reviewed all relevant filings and finds

---

[1] Conney was formerly known as Sierra Arnold. ECF 1, at 1.

[2] The memorandum in support of Fiorenza's motion to dismiss is located at ECF 9-1.

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Fiorenza's motion to dismiss is **GRANTED**, Grimes' motion to dismiss is **GRANTED**, and Conney's motion for leave to file a surreply is **DENIED**. Conney's informal request regarding discovery is **DENIED**. Finally, because only state law claims remain in this action, the complaint is **DISMISSED**.

## I.    BACKGROUND

Conney alleges that between 2017 and 2019, she operated Arnold Construction Group and entered into several contracts, each with arbitration clauses, to perform home improvement projects. ECF 1, at 3–4 ¶¶ 13–14. In April of 2018, Conney filed a complaint against Grimes with the Maryland Department of Labor's Fair Practices Division, "publicly criticiz[ing] MHIC's handling of minority-owned contractors." *Id.* at 4 ¶ 15. Grimes then "recommended criminal charges" against Conney in May of 2019, which Conney asserts was in retaliation for her complaint. *Id.* ¶¶ 15–17. In June 2019, Fiorenza "adopted Grimes's application" for charges, and prosecuted Conney for acting as a contractor without a license and felony theft. *Id.* at 4 ¶ 18, at 5 ¶ 21.

On December 6, 2019, a state court judge made a finding of guilt against Conney and "imposed probation before judgment (PBJ), along with $14,108.88 in 'restitution,'" which Conney contends is "not tied to actual loss, but to the amount of an arbitration award issued in a private contract dispute." *Id.* at 4 ¶ 19. Then, "[i]n 2021, Judge Dana Middleton granted a motion to reduce restitution but failed to implement any modification." *Id.* at 5 ¶ 24. During subsequent violation of probation ("VOP") proceedings in 2023, Judge Middleton ordered Conney to serve 60 days of incarceration "due solely to non-payment of restitution" and "ignored active post-conviction proceedings, evidence of Plaintiff's ongoing Chapter 7 bankruptcy [proceeding,] and

lack of willful noncompliance." *Id.* ¶ 26. Conney asserts that the restitution order has now been transferred to the Central Collection Unit ("CCU"), which has negatively affected her creditworthiness. *Id.* at 6 ¶ 32. Conney also alleges that between 2020 and 2024, "MHIC instructed complainants to circumvent arbitration and surety bond claims, funneling them instead to the state-managed Guaranty Fund." *Id.* ¶ 29. She asserts that she "has been evicted, denied employment, and forced to place three minor children under temporary custody with her 87-year-old grandmother, all while being wrongfully stripped of her license and bond rights." *Id.* ¶ 33.

Conney brings eleven claims: five 42 U.S.C. § 1983 claims for violation of her Fourteenth Amendment due process rights (Count 1); for excessive fines and punishment in violation of the Eighth Amendment (Count 2); for retaliation in violation of the First Amendment (Count 3); for race discrimination in violation of the Fourteenth Amendment (Count 4); and for malicious prosecution, abuse of process, and retaliatory prosecution (Count 5). *Id.* at 7–8. Conney also brings a *Monell*[4] claim (Count 6); a claim of "Fraudulent Guaranty Fund Award Certification" (Count 7); along with state common law claims for malicious prosecution (Count 8); false arrest and false imprisonment (Count 9); and intentional infliction of emotional distress ("IIED") (Count 10). *Id.* at 9–10. Finally, Conney alleges a breach of statutory duty under Md. Code Ann. Criminal Procedure § 6-221 (Count 11). *Id.* at 10. Plaintiff seeks relief in the form of compensatory and punitive damages, along with "an order vacating" her PBJ and the VOP findings, a "full expungement of Plaintiff's criminal record," a permanent injunction enjoining the CCU from further efforts to collect Conney's restitution debt, an order directing the MHIC "to immediately reinstate Plaintiff's license and strike all related disciplinary notations" from her record, and "an

---

[4] A *Monell* claim refers to a municipal liability claim pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

order requiring the State of Maryland to conduct an independent forensic audit of MHIC's administration of the Guaranty Fund." *Id.* at 10–12.

Conney filed the complaint on July 24, 2025. ECF 1. Fiorenza and Grimes were each served in October of 2025, and they timely filed their respective motions to dismiss. ECF 12 (Fiorenza's); ECF 14 (Grimes'). On January 8, 2026, Plaintiff's summons for the State of Maryland was returned unexecuted. ECF 21.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

Because Plaintiff brings this suit pro se, the Court must liberally construe her pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404

4

U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for h[er], nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

## III.   ANALYSIS

### A.   The State of Maryland is Immune from Suit.

As an initial matter, the Court addresses the viability of suit against the State of Maryland. The State of Maryland has not been served in this action. *See* ECF 21 (summons for the State of Maryland returned unexecuted). Nevertheless, Conney's claims against the State of Maryland cannot proceed because the State of Maryland is immune from suit pursuant to the Eleventh Amendment to the United States Constitution. Under the Eleventh Amendment, a state and its agencies and departments are immune from suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id.* (citing *Florida Department of Health v. Florida Nursing Home Assn.*, 450 U.S. 147 (1981) (per curiam)).

While the State of Maryland has waived its sovereign immunity for certain types of cases brought in its courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity to suit in federal court. *See id.* § 12-103 (2) ("This subtitle does not . . . waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution"). "A State's constitutional interest in immunity encompasses not merely whether it

5

may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 99 (emphasis in original); *see also id.* at 100 ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."). Because the State of Maryland is immune from suit in federal court, it is dismissed as a defendant in this action.

### 1.    Count 6 is not an available cause of action.

Moreover, Conney purports to bring Count 6, for *Monell* liability, against the State of Maryland, the MHIC, and the CCU. ECF 1, at 9. The MHIC and CCU are not named as defendants in this action and, as noted, the State of Maryland and its agencies are immune from suit. *See supra* Section III.A. Under *Monell*, "a municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). But "*Monell* liability is only available for municipalities and is not available for a state or its departments." *Murrill v. Merritt*, Civ. No. DKC-17-2255, 2022 WL 4080308, at *10 (D. Md. Sept. 6, 2022).

The Maryland Home Improvement Commission, or MHIC, is a state agency, housed under the Maryland Department of Labor, which "licenses and regulates home improvement contractors and salespersons." Maryland Dep't of Lab., Maryland Home Improvement Comm'n, https://labor.maryland.gov/license/mhic/ [https://perma.cc/P3BM-WLHB]. The Central Collection Unit, or CCU, is also a state agency under the Maryland Department of Budget and Management. Department of Budget and Management, Central Collection Unit, https://dbm.maryland.gov/ccu/pages/ccuhome.aspx [https://perma.cc/Z4FD-R2KX]. Because a *Monell* claim is not available against these state agencies, Count 6 must be dismissed.

6

## B.    Fiorenza is Entitled to Prosecutorial Immunity.

Fiorenza argues that all claims against him must be dismissed because he is protected by prosecutorial immunity. ECF 9-1, at 1. Maryland's State's Attorneys are quasi-judicial officers who enjoy absolute immunity when performing prosecutorial functions, as opposed to investigative or administrative ones. *See Imbler v. Pachtman*, 424 U.S. 409, 422–23 (1976); *see also Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018); *Springmen v. Williams*, 122 F.3d 211 (4th Cir. 1997). "That decision rests on an 'important public policy' justification." *Savage v. Maryland*, 896 F.3d 260, 268 (4th Cir. 2018) (quoting *Carter v. Burch*, 34 F.3d 257, 261 (4th Cir. 1994)). "The public trust of the prosecutor's office would suffer were the prosecutor to have in mind his own potential damages liability when making prosecutorial decisions—as he might well were he subject to § 1983 liability." *Id.* (internal quotation marks omitted) (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 341–42 (2009)).

"Because prosecutorial immunity 'safeguards the process, not the person,' it applies only to conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Id.* (internal quotation marks omitted) (quoting *Nero*, 890 F.3d at 117–18). The Court must use a "functional approach" to "determine whether a particular act is 'intimately associated with the judicial phase.'" *Nero*, 890 F.3d at 118 (quoting *Imbler*, 424 U.S. at 430). The Fourth Circuit has provided the following guidance: "A prosecutor acts as an advocate when she professionally evaluates evidence assembled by the police, decides to seek an arrest warrant, prepares and files charging documents, participates in a probable cause hearing, and presents evidence at trial." *Id.* (citing *Buckley*, 509 U.S. at 273; *Kalina*, 522 U.S. at 130; *Burns*, 500 U.S. at 493; *Imbler*, 424 U.S. at 431). "Actions taken by a prosecutor *after* a probable-cause determination has been made generally are classified as 'advocative' functions[.]" *Annappareddy v. Pascale*, 996 F.3d 120, 139

7

(4th Cir. 2021) (emphasis in original) (citing *Nero*, 890 F.3d at 118). In applying this functional approach, courts in the Fourth Circuit consider only "'the nature of the function performed,' without regard to 'the identity of the actor who performed it,' 'the harm that the conduct may have caused,' or even 'the question whether it was lawful.'" *Nero*, 890 F.3d at 118 (quoting *Buckley*, 509 U.S. at 269, 271).

The only allegations against Fiorenza are that he "act[ed] on the unlawful charges filed by Grimes including acting as a contractor without a license and felony theft," ECF 1, at 4 ¶ 18, and "adopted Grimes's application and prosecuted *State v. Arnold* in the District and Circuit Court for Baltimore City," *id.* at 5 ¶ 21 (italicization added). These allegations fall squarely within the scope of prosecutorial immunity as they are unquestionably associated with judicial process. *Cf. Crouch v. City of Hyattsville*, Civ. No. DKC-09-2544, 2010 WL 3653345, at *7 (D. Md. Sept. 15, 2010) (finding a decision to initiate prosecution and the propagation of certain facts in the course of prosecution were "textbook examples of claims foreclosed by prosecutorial immunity"). Accordingly, Fiorenza enjoys prosecutorial immunity for them. *See Imbler*, 424 U.S. at 431 (holding that a prosecutor is immune from civil suit when "initiating a prosecution and in presenting the State's case").

Plaintiff, however, argues that "Fiorenza acted outside the prosecutorial function" when he allegedly "coordinated investigative and administrative actions before probable cause existed, influenced MHIC referrals, and referenced familiarity with the arbitration judge whose award mirrored his restitution request." ECF 16, at 3. These facts are not alleged in the complaint. *See* ECF 1, at 4–5. Even if they were, such vague allegations would be unlikely to overcome prosecutorial immunity or state a claim upon which relief could be granted. *See Nero*, 890 F.3d at 120 n.4 (noting that conclusory allegations that lacked "specific supporting facts" were insufficient

8

to overcome prosecutorial immunity). Accordingly, Fiorenza's motion to dismiss is granted and Conney's claims against him dismissed.

### C.      The Court Will Grant Grimes' Motion to Dismiss.

Grimes argues that Conney's § 1983 claims are barred by *Heck v. Humphrey*. ECF 14-2, at 8. Grimes also contends that she is immune from suit based on qualified and statutory immunity. *Id.* at 17–20. She further argues that some of Conney's claims are time-barred. *Id.* at 14–17. The Court concludes that all of Conney's claims against Grimes are subject to dismissal for the various reasons explained below.

1.      Plaintiff is barred from bringing Counts 1, 5, and 8.

Plaintiff's § 1983 due process (Count 1) and malicious prosecution (Count 5) claims (as brought against Grimes or any other defendant) are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck v. Humphrey*, the Supreme Court held that to bring a § 1983 action for damages after a plaintiff has been convicted and/or imprisoned in the underlying criminal proceeding, the "plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" 512 U.S. at 486–87. If a claim "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence," then it "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. "Through what has become known as the 'favorable termination requirement,' the Court ensured that § 1983 litigation would not result in inconsistent judgments or retrials of old state convictions through pathways other than those delineated by Congress." *Griffin v. Baltimore Police Dep't*, 804 F.3d 692, 695 (4th Cir. 2015) (citing *Nelson v. Campbell*, 541 U.S. 637, 646–47 (2004)).

9

Counts 1 and 5 imply the invalidity of Conney's conviction for acting as a contractor without a license. *See, e.g.*, ECF 1, at 7 (alleging Grimes "fabricated criminal allegations"), at 8 (alleging that "Grimes initiated criminal charges without prosecutorial authority, probable cause, or an indictment, using fabricated or misrepresented facts"). Plaintiff was punished with a PBJ in that case which, in Maryland, a "requires a finding of guilt." *Daulatzai v. Maryland*, 556 F. Supp. 3d 536, 542–43 (D. Md. 2021) (quoting *Howard Cnty. Dept. of Social Servs. v. Linda J.*, 869 A.2d 404, 408 (Md. App. 2005)), *aff'd*, 97 F.4th 166 (4th Cir. 2024)). Thus, Judge Chuang of this Court has also previously found that "a Maryland PBJ disposition is the equivalent of a conviction for purposes of *Heck*." *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 379 (D. Md. 2018). As Judge Chuang noted:

> Although a PBJ disposition under Maryland law [] does not result in a formal conviction or judgment, *see Powell v. Md. Aviation Admin.*, 647 A.2d 437, 441 (Md. 1994), it is . . . a final judicial act with an order imposing conditions of probation. More importantly, a PBJ, by statute, necessarily comes after a finding of guilt. *See* Md. Code Ann., Crim. Proc. § 6-220(b)(1) (2011) (stating that "[w]hen a defendant pleads guilty or nolo contendere or is found guilty of a crime, a court may state the entering of judgment, defer further proceedings, and place the defendant on probation"); *Linda J.*, 869 A.2d at 410 ("The probation before judgment statute plainly requires that a determination of guilt must precede the granting of probation before judgment."). Because such a finding of guilt would necessarily be undermined by a successful challenge to the underlying arrest, the Court concludes, based on the reasoning of *DeLeon*, that a Maryland PBJ disposition is the equivalent of a conviction for purposes of *Heck*. *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 654 (5th Cir. 2007).

*Id.* at 379. The Court agrees with Judge Chuang and finds that Conney's PBJ required a finding of guilt and thus these three claims are barred by *Heck*.[5]

---

[5] More recently, the Court of Appeals for the Fourth Circuit held that restitution owed after the imposition of a Maryland PBJ is "restitution . . . included in a sentence on the debtor's *conviction of a crime*" and thus is not dischargeable under 11 U.S.C. § 1328(a)(3). *Feyijinmi v. Cent. Collection Unit*, 105 F.4th 662, 669 (4th Cir. 2024) (emphasis added). The Court noted that while the "[t]he records from [the petitioner's] Maryland state court proceedings [were]n't available," it

10

Conney argues that a PBJ "is not a final conviction," because "no judgment of guilt remains once probation concludes." ECF 16, at 4–5. Even if this characterization were true, and it is not,[6] Conney's PBJ *did* end in a judgment of guilt when she violated her probation in 2021. *See* ECF 1, at 5; *see also State of Maryland v. Sierra Shailia Arnold*, Criminal Case No. 819284008 (Cir. Ct. Baltimore City, October 11, 2019) (Maryland Judiciary Case Search, http://casesearch.courts.state.md.us/casesearch/inquirySearch.jis (Under "Case Number Search," enter case number "819284008"; then select "Search") (last visited June 8, 2026) (reflecting a guilty disposition on August 6, 2021). Given that Conney's conviction for acting as a contractor without a license remains intact, the claims implying the invalidity of that conviction—Counts 1 and 5—are barred by *Heck* and must be dismissed.

Likewise, Conney's § 1983 and state law malicious prosecution claims (Counts 5 and 8) cannot proceed because Conney cannot show a favorable termination of her criminal proceedings. A malicious prosecution claim under Maryland law requires "that the defendant instituted or continued a criminal proceeding; the proceeding was resolved in favor of the accused; there was no probable cause for the proceeding; and the defendant acted with malice, or for the primary purpose other than that of bringing an offender to justice." *Burley v. Balt. Police Dep't.*, 422 F. Supp. 3d 986, 1035 (D. Md. 2019). (citing *Okwa v. Harper*, 757 A.2d 118, 130 (Md. 2000)); *see*

---

nevertheless knew "that for [her] to be placed on probation before judgment, *a court first needed to find her guilty*." *Id.* (emphasis added).

[6] Conney ignores that the defendant's probation must be *successfully* completed in order to ensure that no final conviction is recorded. *See* Md. Code Ann., Crim. Proc. § 6-220 (c)(2) (noting that "if the court finds that the defendant has violated the terms of the probation agreement . . . the court may find the defendant guilty of the underlying crime as a result of the violation[.]"); *id.* at (i)(1)–(3) (noting that "[o]n fulfillment of the conditions of probation before judgment, the court shall discharge the defendant from probation" and such discharge is "without judgment of conviction and is not a conviction for the purpose of any disqualification or disability imposed by law because of conviction of a crime.").

11

*also Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (explaining that a § 1983 malicious prosecution claim "incorporates elements of the analogous common law tort of malicious prosecution"). "A prosecution terminates in favor of a criminal defendant 'when any of the following occur: a judge discharges the accused at a preliminary hearing, refusal of a grand jury to indict, the formal abandonment of the proceedings by the public prosecutor, quashing of an indictment or information, acquittal, or a final order in favor of the accused by a trial or appellate court.'" *Daulatzai*, 556 F. Supp. 3d at 543 (quoting *Candelero v. Cole*, 831 A.2d 495, 500 (Md. App. 2003)); *see also Albertson v. Scherl*, No. 2329, Sept. Term 2015, 2017 WL 2687763, at *9 (Md. App. June 22, 2017) (explaining favorable termination means that "the judgment must indicate the plaintiff's innocence of the alleged misconduct underlying the offenses charged" (citation omitted)). Neither Conney's PBJ sentence nor her violation of probation indicate that her state criminal proceedings terminated in her favor. *Daulatzai*, 556 F. Supp. 3d at 543 ("Probation before judgment is not a favorable disposition of a criminal charge "because probation before judgment . . . requires a finding of guilt"). Conney's malicious prosecution claims must also be dismissed for this reason.

### 2.    Counts 3 and 4 are time-barred.

Some of Conney's § 1983 claims do not necessarily imply the invalidity of Conney's conviction and, therefore, *Heck* does not bar them. These claims include Conney's First Amendment retaliation (Count 3) and race discrimination (Count 4) claims. *See, e.g., Freed v. Herndon*, Civ. No. CCB-19-599, 2020 WL 5816497, at *7 n.5 (D. Md. Sept. 29, 2020) (explaining that a finding that defendants assaulted a plaintiff in retaliation for his criticisms of them "would not by necessity undermine the validity of his conviction for failure to obey a lawful order"). Nevertheless, these claims are untimely as it is clear from the face of the complaint Conney had

12

reason to know of any injury flowing from the alleged retaliation or race discrimination no later than May 2019, when Grimes allegedly filed criminal charges against her.

"The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) (first citing *Bethel v. Jendoco Construction Corp.*, 570 F.2d 1168 (3d Cir. 1978); and then citing 2A Moore's Federal Practice § 8.28, at 8–270 (2d ed. 1948)). But if the time bar is so apparent, then "[t]he Court must dismiss any claim filed after the statute of limitations period has expired." *Deramus v. Montgomery Cnty. Domestic Rels. Section*, Civ. No. GJH-18-2337, 2019 WL 2395311, at *2 (D. Md. June 5, 2019) (citing *Wenzlaff v. NationsBank*, 940 F. Supp. 889, 890 (D. Md. 1996)).

"The statute of limitations for § 1983 claims is borrowed from the applicable state's statute of limitations for personal-injury actions, even when a plaintiff's particular § 1983 claim does not involve personal injury." *Deramus*, 2019 WL 2395311, at *2 (quoting *Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66–67 (4th Cir. 2015)). "In Maryland, the applicable statute of limitations is three years from the date of the occurrence giving rise to the cause of action." *Id.* (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-101). "Although the applicable state statute of limitations supplies the length of the limitations period in a § 1983 action, the time of accrual of the cause of action is a matter of federal law." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). Generally, a "statute of limitations begins to run 'when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.'" *Deramus*, 2019 WL 2395311, at *2 (quoting *Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995)).

Here, Conney alleges that she filed a complaint against Grimes in April of 2018 and, in turn, Grimes retaliated by filing a criminal charge against Conney in May of 2019. ECF 1, at 4. Conney also alleges "Defendants selectively enforced MHIC regulations and criminal sanctions against Plaintiff, an African American contractor, while white contractors with comparable records were not referred for prosecution or denied access to bonding/insurance remediation processes." *Id.* at 8. Thus, the injury flowing from the alleged retaliation and discrimination was Grimes' initiation of criminal charges in May of 2019. *Cf. Bratton-Bey v. Straughan*, Civ. No. DKC-13-1964, 2014 WL 359493, at \*8 (D. Md. Jan. 31, 2014) (drawing on Tenth Circuit precedent to conclude that a § 1983 retaliation claim accrues when a plaintiff learns that a criminal complaint was filed against him); *Hanson Co. v. City of Richmond, Virginia*, No. 3:22CV147 (DJN), 2022 WL 4000415 (E.D. Va. July 29, 2022) (finding a § 1983 race discrimination claim based on denial of an application for a rehabilitation credit accrued on the date that the alleged denial occurred), *aff'd*, No. 22-1909, 2023 WL 2570959 (4th Cir. Mar. 20, 2023). Moreover, Plaintiff alleges that she appeared in state court and received a PBJ on December 6, 2019, and thus was unquestionably aware of the purportedly unlawful charges in 2019. ECF 1, at 4. Given that Plaintiff's complaint was not filed until July of 2025—nearly six years after she was aware of her alleged injury and thus her retaliation and discrimination claims accrued—the three-year statute of limitations bars these claims.

Conney argues, however, that the "continuing-violation doctrine defeats the limitations defense," and cites to *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158 (4th Cir. 1991), in support of this argument. ECF 16, at 5 n.6. Specifically, Conney asserts that "both Defendants" (presumably Fiorenza and Grimes) engaged in ongoing acts that each "constitute[d] a fresh invasion of rights," including VOP proceedings in 2021 and 2023, Plaintiff's post-conviction

14

proceedings in 2024, continued CCU collections, and "MHIC's post 2020 Guaranty-Fund certifications." *Id.* at 5. As the Fourth Circuit noted in *National Advertising*, "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Nat'l Advert.*, 947 F.2d at 1166 (citing *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)). "In general, '[t]o establish a continuing violation . . . the plaintiff must establish that the unconstitutional or illegal act was a . . . fixed and continuing practice.'" *Id.* at 1166–67 (quoting *Perez v. Laredo Junior College*, 706 F.2d 731, 733 (5th Cir. 1983), *cert. denied*, 464 U.S. 1042 (1984)). "The challenged action must be repeated within the statute of limitations period." *Id.* at 1167.

While Conney claims that she continues to suffer ill effects resulting from Grimes' allegedly retaliatory or discriminatory conduct, *see* ECF 1, at 6 ("Plaintiff has since been evicted, denied employment, and forced to place three minor children under temporary custody . . . ."), she does not allege that Grimes engaged in any continuing acts during the limitations period that would trigger the continuing violation doctrine. *Cf. Jiggetts v. Baltimore City Police Dep't*, Civ. No. ELH-18-3430, 2019 WL 3017065, at *9 (D. Md. July 9, 2019) (finding plaintiff's theory of delayed accrual based on argument that "the conditions that defendants created by arresting [him] still exist" without merit). Because the complaint only involves acts allegedly conducted by Grimes in 2019 and not any "fixed or continuing practice," *Nat'l Advert.*, 947 F.2d at 1166, the continuing violation doctrine does not save these claims. Accordingly, Counts 3 and 4 are time-barred and shall be dismissed.

### 3. Count 2 is barred by the *Rooker-Feldman* doctrine.

The Court construes Conney's Eighth Amendment claim as brought against all Defendants, including Grimes, based on the allegation that "Defendants, under color of law, incarcerated Plaintiff solely for non-payment of restitution[.]" *See* ECF 1, at 7. The Eighth Amendment

15

prohibits the imposition of "excessive fines" and "cruel and unusual punishment." U.S. Const. amend. VIII. Conney's Eighth Amendment Claim rests on the allegation that Judge Middleton of the Circuit Court of Baltimore City "incarcerated Plaintiff solely for non-payment of restitution without first conducting a constitutionally required inquiry into her ability to pay," violating "the Eighth Amendment's prohibition on excessive fines and cruel or disproportionate punishment." ECF 1, at 7; *see also id.* at 5. Through this claim, Conney essentially attempts to collaterally attack Judge Middleton's state court ruling; however, the *Rooker-Feldman* doctrine prohibits her from doing so.

Through the *Rooker-Feldman* doctrine, the Supreme Court has "formulated a general rule which distinguishes general constitutional challenges to state laws and regulations over which federal courts have jurisdiction from requests for review of specific state court decisions over which they have no jurisdiction." *Henderson v. Maynard*, Civ. No. JFM-10-2815, 2011 WL 1769827, at *2 (D. Md. May 9, 2011). "If the constitutional claims presented to a United States District Court are inextricably intertwined" with a state court decision, "then the District Court is in essence being called upon to review the state court decision." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983). "This the District Court may not do." *Id.* The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, 544 U.S. 280, 284 (2005). As such, "[i]f the source of the alleged injury is the state court decision, then the *Rooker-Feldman* doctrine will apply to divest the district court of jurisdiction." *Henderson*, 2011 WL 1769827, at *2. As Count 3 of Conney's complaint is "inextricably intertwined" with the Maryland state court judge's decision to sentence Conney to

16

incarceration for non-payment of fines, this Court lacks jurisdiction over the claim under *Rooker-Feldman.* Count 2 must be dismissed as to all Defendants.

> 4.    Counts 7 and 11 are not cognizable causes of action.

Grimes argues that neither "Fraudulent Guaranty Fund Award Certification" (Count 7), nor a claim under Md. Code Ann., Criminal Procedure § 6-221 (Count 11) are cognizable causes of action. ECF 14-2, at 17. Conney does not attempt to rebut this argument in her opposition. *See* ECF 16, at 3–6. "In failing to respond to this argument[,] Plaintiff concedes the point." *Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016). Nevertheless, the Court agrees that Conney has failed to establish cognizable causes of action for these claims.

Section 6-221 of the Criminal Procedure article establishes a state court's authority to "suspend the imposition or execution of a sentence and place the defendant on probation on the conditions that the court considers proper," Md. Code Ann., Crim. Proc. § 6-221, and makes no mention of a private cause of action. And with respect to Count 7, to the extent that Plaintiff wishes to challenge the MHIC's decision to make certain payouts from the Home Improvement Guaranty Fund, *see* ECF 1, at 6 (challenging certain Guaranty Fund payouts), this Court does not have jurisdiction to review the decisions of state administrative agencies. *Wall v. Kiser*, 21 F.4th 266, 273 (4th Cir. 2021) ("[F]ederal courts do not directly review state administrative proceedings, just as they do not directly review state court judgments."). As such, Counts 7 and 11 are dismissed.

17

### 5.     Grimes is entitled to statutory immunity for Counts 8, 9, and 10.

To the extent that Plaintiff intended to bring any of her state law tort claims against Grimes, those claims would fail because Grimes enjoys statutory immunity from these claims.[7] Grimes is an employee of the MHIC, which, as previously noted, is a state agency.

"A state employee is immune from prosecution for such torts arising from an employee's acts performed 'within the scope of employment and without malice or gross negligence.'" *Bahreini v. Zsebedics*, Civ. No. PX-23-1357, 2024 WL 692860, at *5 (D. Md. Feb. 20, 2024) (quoting *Lee v. Cline*, 863 A.2d 297, 307 (Md. 2004)), *aff'd*, No. 24-1411, 2026 WL 74586 (4th Cir. Jan. 9, 2026); *see also* Md. Code Ann., Cts. & Jud. Proc. § 5-522(b); Md. Code Ann., State Gov't § 12-105. "Malice is 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Bahreinei*, 2024 WL 692860, at *5 (quoting *Lee*, 863 A.2d at 311). "Gross negligence is defined as 'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another.'" *Id.* (quoting *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007)).   Conclusory allegations of gross negligence or malice are not sufficient to bring claims outside of the immunity provisions of the MTCA. *See Boyer v. State*, 594 A.2d 121, 131 (Md. 1991); *see also Mang v. City of Greenbelt, Md.*, Civ. No. DKC-11-1891, 2012 WL 115454, at *5 (D. Md. Jan. 13, 2012) ("Plaintiffs asserting malice are held to a high pleading standard that may not be satisfied by conclusory allegations." (quoting *Ames v. Harford Cnty.* Civ. No. RDB-09-1929, 2010 WL 1791547, at *4 (D. Md. May 4, 2010))).

---

[7] The immunity afforded under the Maryland Tort Claims Act ("MTCA") encompasses not only ordinary torts, but also intentional torts like Conney's IIED claim (Count 10). *Lee v. Cline*, 863 A.2d 297, 310 (Md. 2004); *see also McDaniel v. Arnold*, 898 F. Supp. 2d 809, 849 (D. Md. 2012) ("Moreover, statutory immunity under the MTCA applies to both negligence and intentional torts.").

18

As an investigator for the MHIC, Grimes is indisputably a state employee. ECF 1, at 2. Although Conney makes the conclusory allegation that "Defendants ... initiated criminal proceedings with malice," *id.* at 9, she fails to allege any facts outside of this conclusory assertion that would bring her claims outside of the immunity provisions of the MTCA. *MedSense, LLC v. Univ. Sys. of Maryland,* 420 F. Supp. 3d 382, 397 (D. Md. 2019) ("Where a plaintiff advances claims alleging malice, the complaint should contain well-pled facts showing ill-will or evil or wrongful motive to be sufficient to take a claim outside of immunity and non-liability provisions of the MTCA."). For example, Plaintiff generally alleges that Grimes "reopened previously closed regulatory complaints, mischaracterized complainants, and recommended criminal charges . . . ." *Id.* at 4. She also alleges that Grimes submitted a statement of charges in May 2019 and "falsely identif[ied] complainants as 'elderly' individuals rather than business entities," and "misstat[ed] the contract and payment fact acts which served to establish false probable cause and inflame judicial bias." *Id.* None of these facts, taken as true, suggest that Grimes acted with any "evil or rancorous motive influenced by hate." *Nero,* 890 F.3d at 127. As such, Conney fails to meet the high bar of sufficiently alleging malice to overcome Grimes' statutory immunity. *Cf. Kelly v. Miller,* Civ. No. ELH-20-2531, 2022 WL 2703827, at *28 (D. Md. July 12, 2022) (finding malice sufficiently alleged where defendants were "accused of participating in the brutal, deliberate, and unprovoked use of violence against [the plaintiff], and thereafter covering up the circumstances"); *Mang,* 2012 WL 115454, at *5 (finding malice sufficiently alleged where the complaint alleged that the defendant officers "punched and beat Michael Mang repeatedly causing a fractured nose and numerous bruises" (alteration and emphasis omitted)).

Moreover, Conney makes *no* mention of gross negligence in her complaint and raises it for the first time in her opposition, asserting without citation to the complaint that Grimes' conduct

19

"constitutes malicious and grossly negligent conduct, defeating Maryland Tort Claims Act immunity." ECF 16, at 4. Because the facts in the complaint do not rise to the level of malice or gross negligence, Conney is entitled to statutory immunity from Conney's state law claims. Counts 8, 9, and 10 will be dismissed against Grimes on that basis.

## D. Conney's Motion for Leave to File a Surreply (ECF 18) is Denied.

Conney moves to file a surreply and argues that Grimes "raises new factual assertions, new legal arguments, and new grounds for dismissal." ECF 18, at 1. Surreplies are generally disfavored under the Local Rules of this Court. *See* Loc. R. 105.2(a) (D. Md. 2025) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."); *see also Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015). Surreplies may only be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 Fed. App'x 960 (4th Cir. 2004). Where "the arguments made by Defendants in their reply brief are merely responses to new arguments made by Plaintiffs in their response," a surreply is not appropriate. *Aguilar v. LR Coin Laudromat*, Civ. No. RDB-11-2352, 2012 WL 1569552, at *2–3 (D. Md. May 2, 2012).

The Court concludes that a surreply is not warranted here because Grimes' reply is merely responsive to the arguments raised in Conney's opposition brief. For example, Conney contends that a surreply is needed because Grimes advanced a "new and substantially expanded *Heck v. Humphrey* argument." ECF 18, at 2 (italicization added). However, Grimes' argument related to *Heck* is responsive to the arguments raised by Conney in her opposition. *See e.g.*, ECF 17, at 3 ("Plaintiff now argues that she's 'challeng[ing] the falsification of a charging document'" (citing ECF 16, at 4 n.5)). Given that Grimes does not raise any new matters in her reply that would justify a surreply, Conney's motion to file a surreply is denied. *Cf. Barnes v. Costco Wholesale*

20

*Corp.*, Civ. No. JKB-18-3377, 2019 WL 4933070, at *2 (D. Md. Oct. 7, 2019) ("[R]esponsive arguments in a reply do not warrant a surreply.").

### E.    John Does 1–10

The only remaining Defendants in this action are John Does 1–10, who are allegedly unidentified "employees or agents of the State" and are unserved. ECF 1, at 3. Count 7, "Fraudulent Guaranty Award Certification," appears to be a claim brought against the Doe defendants. ECF 1, at 9 (alleging that "MHIC and its agents knowingly certified false eligibility for Guaranty Fund payouts"). As previously noted, this claim is not viable because it asks this Court to impermissibly review acts of a state administrative agency. *See* Supra Section III.C.4. The only other surviving claims in this action that could be brought against the Doe defendants are Conney's state law claims for false arrest (Count 9) and IIED (Count 10).

As the remaining claims all arise under state law and there does not appear to be an independent basis for this Court to exercise jurisdiction based on diversity jurisdiction,[8] the Court will decline to exercise supplemental jurisdiction over Counts 9 and 10. District courts "may decline to exercise supplemental jurisdiction" under certain circumstances, including when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[A] district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and

---

[8] Conney is a citizen of Maryland, ECF 1, at 1, and she alleges that "all parties reside . . . in Maryland," *id.* at 2.

considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citations omitted). The Fourth Circuit has recently emphasized that "[a]s a general rule, 'when a district court dismisses all federal claims in the early stages of litigation . . . it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice.'" *Poppleton Now Cmty. Ass'n, Inc. v. La Cite Dev., LLC*, 175 F.4th 455, 464–65 (4th Cir. 2026) (quoting *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024)). This case is still in its infancy as not all of the defendants have been served, and the case has not proceeded to discovery. Accordingly, because all federal claims have been dismissed, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims against the Doe defendants.[9]

## IV.   CONCLUSION

For the foregoing reasons, Fioreza's motion to dismiss is GRANTED, and Grimes' motion to dismiss is GRANTED. Conney's informal request for issuance of Rule 45 subpoenas and early discovery is DENIED. Conney's motion for leave to file a surreply is DENIED. The Court declines to exercise supplemental jurisdiction over the remaining state law claims, and so the complaint is DISMISSED.

A separate implementing order will issue.

Dated: June 15, 2026                                        /s/
                                                    Brendan A. Hurson
                                                    United States District Judge

---

[9] Given that Conney's complaint will be dismissed, her informal request for issuance of Rule 45 subpoenas and early discovery, ECF 16, at 6, is necessarily denied.